July 31, 1991

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN RE THE ESTATE OF: ) APPEAL NO. 90-044
 ) CIVIL ACTION NO. 88-582P
 JOSE P. CABRERA, )
 ) OPINION
 Deceased. )
_____)

Argued and submitted March 28, 1991

Counsel for Appellant: Charles Novo-Gradac
 WHITE, NOVO-GRADAC & MANGLONA
 P.O. Box 222 CHRB
 Saipan, MP 96950

Counsel for Appellee: Eric Basse
 JAMES GRIZZARD LAW OFFICE
 Caller Box PPP 374
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice; VILLAGOMEZ, Justice; HILLBLOM,
 Special Judge.

VILLAGOMEZ, Justice:

This is an appeal from a decision of the Superior Court in a probate matter. On March 22, 1990, the administrator petitioned the trial court for final distribution of the assets of the estate. The petition set forth the proposal for distribution. Three grandchildren of the deceased, namely: Elphidia Reyes Muna, Bernadita Reyes Mercado, and Maria Reyes Crisostimo (appellants herein), objected to the administrator's proposal. The trial court

197

held an evidentiary hearing to determine how to distribute the assets of the estate.

On August 9, 1990, the trial court issued a decision approving the administrator's proposed distribution with one modification. Although not proposed by the administrator, the trial court gave each of the three appellants, 1,524 square meters of the Fina Sisu property. The three objectors timely appealed.

## FACTS

Jose P. Cabrera, better known as Pepe, (hereafter "Pepe") died on March 25, 1975, survived by his wife, Maria Mendiola Cabrera, who died in 1984. Pepe and Maria were both Chamorro. Pepe married Maria, who had a daughter, Francisca T. Borja, from a previous marriage. Pepe raised Francisca, under Chamorro custom of "poksai",[1] who helped Pepe and Maria raise their subsequent children -- Francisca's stepbrothers and sisters.

Pepe and Maria have ten children from their marriage. They are: Francisco, Celia (deceased), Gabriel (deceased), Ramona, Vicente (deceased), Rosario, Probio, Martha, Vicenta, and Maria (deceased).

The daughter Maria predeceased Pepe, without issue. Gabriel predeceased Pepe, with eleven surviving children. Celia predeceased Pepe in 1944, survived by three daughters, Elphidia, Bernadita, and Maria ("appellants"). Elphidia and her sister Maria

---

[1] "Poksai" means the raising of a child as though the child were a natural and legitimate child.

were raised by their father's side of the family. Pepe and his wife Maria took Bernadita, as a little girl, into their home and raised her, under "poksai" as though she were their natural child.

Pepe and his wife also took and raised, by "poksai", their grandson Francisco Mendiola Cabrera. Francisco is the son of Probio, the administrator. Although Francisca Tudela Borja, Bernadita Reyes Mercado, and Francisco Mendiola Cabrera were not natural children of Pepe, he raised all three as though they were his natural children.

During his lifetime, Pepe owned two parcels of land -- one in Fina Sisu, containing 7,639 square meters (hereafter "Fina Sisu property") and another in Chalan Piao containing 14,539 square meters (hereafter "Chalan Piao property"). Pepe's family house was in the Chalan Piao property.

Evidence adduced at the hearing showed that Pepe gave Bernadita a portion of his property in Chalan Piao because he raised her by "poksai", and wanted her to have a share of his land. Pepe also designated a parcel of Chalan Piao property for Francisca Tudela Borja and another parcel for Francisco Mendiola Cabrera because he considered them as his children.

As Pepe's children married and were ready to build their own house, he would designate where on his land each was to build. On many occasions, Pepe told different members of his household that whichever land they occupied, that would be their property.

In 1953, after Vicente married, Pepe showed him a quonset house in Chalan Piao and told him to live there. Vicente moved

199

onto that lot where his family still lives. This lot has been designated as Lot 458-New-10.

Prior to 1956, Pepe showed his daughter Rosario, which part of the Chalan Piao property she could build her house on. She did built a house which was destroyed by fire in 1956. She again rebuilt on the property which she claims today as hers.

After Probio got married, in 1957, Pepe showed him where to build his house in Chalan Piao, which has been designated as Lot No. 458-New-R-1. Subsequently, his father told him that whatever he occupied would be for him. Probio has been occupying the same land since then.

In 1970, Pepe showed his daughter Vicenta the portion of the Chalan Piao property where she later built her house. This parcel has since been designated as Lot No. 458-New-9. Between 1971 and 1972, Pepe also showed his daughter Martha where to build her family house in Chalan Piao, which is now identified as Lot No. 458-New-1.

The evidence further shows that as to each of his living children and the three children Pepe raised by "poksai" (Francisca Borja, Bernadita Mercado, and Francisco Cabrera), Pepe had designated what specific parcels each was being given. As to Bernadita's portion, Pepe executed a deed in her name in order that she could obtain a housing loan from MIHA. The lots designated for Pepe's natural children and for those children he raised

("pineksai")[2] were not equal in size or similar in shape.

The evidence also shows that Pepe had told the entire family that the Fina Sisu property was for the children of his deceased son, Gabriel, who had many children.

At one point in time, Maria Reyes Crisostimo (one of the appellants) asked Pepe for a parcel of land in Chalan Piao for herself. Pepe told her that she should seek land from her father's side of the family who had raised her. Pepe never gave or designated any parcel for her in Chalan Piao or Fina Sisu.

After Pepe died, his children, together with two of the children he raised (Francisca and Francisco), attempted to distribute among themselves by mutual conveyance to each other, the title to the respective parcels designated to each by Pepe. A deed was drafted in a way that would divide and transfer the land among themselves in accordance with Pepe's wishes. However, Bernadita (one of the children raised by Pepe) refused to sign the mutual conveyance deed because she and her two sisters, Elphidia and Maria, were not being given the parcel they believed should be their mother's share, Lot No. 458-New-3, of the Chalan Piao property. Consequently, the deed of partition was never fully executed. The probate action followed.

There is no factual dispute as to the administrator's proposal for distribution of the estate, except with respect to Lot No. 458-New-3.

---

[2] "Pineksai" means a person who is being raised or has been raised under "poksai".

The administrator and other witnesses testified that Pepe, prior to his death, had designated this parcel to go to his daughter, Ramona. Other witnesses testified, to the contrary, that the same parcel was designated by Pepe for his deceased daughter, Celia, which would descend to her natural children, Bernadita, Maria and Elphidia. The trial court approved the administrator's proposal -- that this parcel be given to Ramona. The court then decreed that the three appellants each be given a parcel in Fina Sisu, equivalent to a Chalan Piao house lot, notwithstanding the fact that Pepe had designated all of the Fina Sisu property to go to the children of his deceased son, Gabriel.

## ISSUES

The four issues raised by the appellants are as follows:

1. Whether the trial court erred by failing to determine who Pepe's heirs are and declare that they each hold in his estate an equal undivided share per stirpes.

2. Whether the trial court erred by approving the administrator's proposed distribution of the Chalan Piao property to persons who are not Pepe's heirs, i.e. Francisca and Francisco.

3. Whether the trial court erred by approving the administrator's proposal for distribution of the estate without having been petitioned by any of the heirs or the administrator, pursuant to 8 CMC § 2803, and without notice and a hearing pursuant thereto.

4. Whether the trial court erred by rejecting the objectors'

counter-proposal that an equitable partition and distribution be made, taking into consideration the quality or value of the respective parcels of land.

All the above issues raise questions of law and are to be reviewed de novo. In Re Adoption of Amanda C. Magofna, No. 90-012, (N.M.I. Dec. 5, 1990).

## I.

Appellants contend that, since Pepe died without a formal will, "the court had no choice but to find and confirm, that the property of decedent passed at the time of his death in equal shares, per stirpes, to his descendants . . . ." (Emphasis added.) They argue that both the Fina Sisu and the Chalan Piao properties should be distributed equally to Pepe's nine natural children or their heirs, per stirpes. They assert that the trial court, having failed to do so, erred as a matter of law.

If Pepe had died intestate without designating any portion of his property to his children, or if he had designated but his children failed to live thereon, then appellants' contention would have merit. Under the facts and circumstances of this case, however, appellants' contention ultimately falls short.

We begin our analysis by noting that our probate code does not apply to Pepe's estate since it became effective years after Pepe passed away.[3] Pursuant to 8 CMC § 2102, we look at Title 13 of

---

[3] 8 CMC § 2102 states:

The property of persons who die before February 15, 1984

the Trust Territory Code -- the Trust Territory statute that applied at the time of Pepe's death. Title 13, however, relates only to wills. It does not provide any procedural or substantive law governing intestate succession. However, 1 TTC § 102 mandates: "The customs of the inhabitants of the Trust Territory . . . shall be preserved. The recognized customary law . . . shall have the full force and effect of law so far as . . . not in conflict with the laws mentioned in section 101 . . . ."[4]

---

shall pass according to Title 13 of the Trust Territory Code and other applicable law.

[4] 1 TTC § 101. Additional Laws Applicable to Trust Territory.
The following are declared to be in full force and to have the effect of law in the Trust Territory of the Pacific Islands:

1. the Trusteeship Agreement;

2. such laws of the United States, as shall, by their own force, be in effect in the Trust Territory, including the Executive Orders of the President and orders of the Secretary of the Interior;

3. laws of the Trust Territory and amendments thereto;

4. District Orders heretofore promulgated by the District Administrators of the Trust Territory and Emergency District Orders promulgated by the District Administrators in accordance with Section 108 of this Chapter;

5. the acts of legislative bodies convened under charter from the High Commissioner when these acts are approved by the High Commissioner or otherwise become law as may be provided by charter or the laws and regulations of the Trust Territory; and,

6. duly enacted Municipal Ordinances.

We, therefore, examine Chamorro customary law existing at the time of Pepe's death to see if any would govern the disposition of this estate.

We find that many aspects of Chamorro custom are relevant for our consideration. We turn to a respected study on the ethnology of the people on Saipan which has been cited on many occasions by the Trust Territory and Commonwealth Courts.

> It is by custom considered right and proper that every male head of a family should make a _partido_ before his death. In actuality, it often happens that he does not, and that a division of the land is made by the heirs after his death. This division after the death of the male parent is also called a _partido_, . . . .

A. Spoehr, Saipan: _The Ethnology of a War-Devastated Island_, 136 (Chicago Natural History Museum, 1954).

> The formal _partido_ prior to the father's death is a traditionally sanctioned act preliminary to the inheritance of land by the heirs. In actuality, there are considerable number of instances where either the father or both the parents have died without making a _partido_. In such a case, it remains for the surviving heirs to come to an agreement on the division of the property.

_Id_.

> If the father has previously allocated various tracts of farm land to the sons who are married, the formal announcement acts as validation of the previous allocation. Furthermore, the father's word is not to be disputed, there or thereafter. Parental respect is one of the major emphasis of traditional Chamorro culture.

_Id_.

> Regardless of the formal aspects of the _partido_, Chamorro custom dictates that the family land should be divided at each generation.

_Id_., at 137.

> Conflict among the heirs may arise over the division of inherited land. If the parents both die without making a _partido_, the land is divided by common consent of the children, though the oldest son is the acknowledged head of the family and his word will carry most weight. Disputes may occasionally arise even if the father has made a _partido_, but on this point Chamorro custom dictates that the word of the father is not to be challenged and that changes in the division of property after his death can take place only by consent of all the heirs.

_Id._, at 143.

> On the whole, the institution of the _partido_ is a reasonably effective mechanism for forestalling dispute among heirs over the inheritance of land and houses. From the foregoing data it is apparent that the division of land among heirs is flexible.

_Id._, at 144.

> The core of Chamorro land tenure and inheritance on Saipan lies in the individual ownership of land in the division of family holdings among the children of each generation. As an observant man remarked, 'When a Chamorro thinks of land, he thinks of his children, and of how much land he should have to provide for them. This is always uppermost in his thoughts.'

■ This Court has previously ruled on the flexibility of a "partida" and we stated:

> We note that the elements stated by the lower court necessary to prove a "partida" are elements necessary to prove an _ideal_ "partida." A "partida" is inherently flexible and can be shown through ways other than through the _ideal_ "partida."

_Cabrera v. De Castro_, No. 89-018 (N.M.I. June 7, 1990).

■ The Northern Mariana Islands Probate Law (8 CMC § 2101 _et seq._) came into effect on February 15, 1984, enacted by the CNMI Legislature. Although this statute does not apply to Pepe's estate, the legislature set forth the underlying purposes and

206

policies of the law, part of which acknowledged an intention to effectuate the Chamorro custom which is that the intent of the father on the distribution of his land is to be effectuated, respected, and not to be disregarded.[5]

The trial judge's decision to effectuate Pepe's wishes in the distribution of his property among his natural children and his "pineksai" is in line with Chamorro customary law and culture. To decide otherwise would have been contrary to our custom regarding land distribution.[6]

The trial court's findings as to Pepe's wishes are supported by substantial evidence. While Pepe did not perform an "ideal Partida,"[7] he did clearly designate to each child which parcel goes to whom. He, in essence, orally gave away specific parcels to his children (as they married and moved out) by his designation and by

---

[5] 8 CMC § 2104 states:

Purposes.

 (b) The underlying purposes and policies of this law are:

 (2) to discover and make effective the intent of a decedent in distribution of his property;

 (4) to realize the compelling interest of the Northern Mariana Islands in preserving the historic traditions and culture of its citizens of Northern Marianas descent.

[6] Counsel for appellants state on page 16 of his brief that "The Court seemed to abhor undermining the 'wishes' of decedent." But it is exactly the wishes and intent of the decedent which forms the basis of intestate distribution under Chamorro custom which, in the absence of statute, is the law. This is what the trial judge did.

[7] See Cabrera v. Castro, supra.

the actual use of the lands by the children.[8] See <u>Guerrero v. Guerrero</u>, No. 90-018 (N.M.I. March 18, 1991) (A gift of land is accomplished when the father had the intent to orally convey his land and it is delivered to, and accepted by, the son.)

Based on the evidence and Chamorro customary law, the trial court correctly approved Pepe's wishes as contained in the petition for final distribution. Its decree distributing part of the Fina Sisu land to the three appellants is not an issue being raised on appeal, and will not be examined.

Although the trial court did not expressly state that the proposed distribution in the administrator's petition for final distribution is based on "partida" or oral conveyance, we conclude the same to be by a "partida" made by Pepe during his lifetime. The attempt by the heirs to distribute by deed the land among themselves after Pepe's death is in accordance with Chamorro custom. See, <u>Spoehr</u>, at 136. Had they accomplished the division, that would have clearly confirmed the "partida" made by Pepe.

The trial court did not err by not ruling that each of the heirs hold an undivided equal share per stirpes, as appellants contend should be done.

## II.

The trial court approved the administrator's petition that Pepe's "pineksai" (Francisca T. Borja and Francisco M. Cabrera) be

---

[8] The statute of frauds did not exist in the CNMI until October 28, 1983. See 2 CMC § 4911 (Commission Comment).

given a share of the estate pursuant to Pepe's wishes. We affirm the trial court's determination that these two received their shares also by "partida". Appellants contend that the trial court erred because Francisca and Francisco are not "heirs". Consequently, they have no legal basis for receiving any part of the estate.

It is true that Francisca and Francisco are not Pepe's natural children but are "pineksai" -- just like the appellant, Bernadita. Since Pepe raised them as if they were his natural children, he specifically designated to each of them a share in his property. In the case of Bernadita, he executed a deed to the land in her name so that she could obtain a house loan from MIHA. As to Francisca and Francisco, he designated to each which parcels they are to receive.

The evidence clearly shows that Pepe decided not to give any land to the two daughters of his deceased daughter, Celia, whom he did not raise by "poksai". One of them, Maria, specifically asked Pepe for a parcel of land. Pepe declined and instructed her to get land from her father's side of the family because they raised her.

The trial court did not err in approving the administrator's proposal that Francisca and Francisco receive the parcels of the Chalan Piao property expressly designated for them by Pepe during his lifetime.

## III.

The Administrator petitioned the trial court for final

209

distribution of the estate. The appellants objected to the proposal. Consequently, the trial court held an evidentiary hearing which lasted several days. At the hearing, the appellants appeared and testified, presented additional evidence, and cross-examined adverse witnesses. Based on the evidence at the hearing, the trial court entered its memorandum decision.

Appellants contend that the trial court erred by approving the proposed distribution since there was no petition to partition filed pursuant to 8 CMC § 2803.[9]

 The trial court did not err by approving the petition for final distribution of the estate. Section 2803, pertaining to partitions, does not apply prior to the approval of the petition for final distribution in this estate. It applies ". . . when two or more heirs . . . are _entitled_ to _distribution_ of _undivided interests_ . . . ." (Emphasis added.) Partition may thereafter be ordered prior to the closing of the estate.

Until the court determines who is going to receive what share, no heir is _entitled_ to _distribution_. Further, unless it is

---

[9] 8 CMC § 2803. _Partition for Purposes of Distribution_.

Unless custom or the provisions of this law require otherwise, when two or more heirs or devisees are entitled to distribution of undivided interests in any real or personal property of the estate, the personal representative or one or more of the heirs or devisees may petition the Court prior to the closing of the estate, to make partition. After notice to the interested heirs or devisees, the Court may partition the property in the same manner as provided by law for partitions. The Court may direct the personal representative to sell any property which cannot be partitioned without prejudice to the owners and which cannot conveniently be alloted to any one party.

settled that a certain property is to be distributed to a specific group of heirs, having undivided interests thereto, there would appear to be no basis for a partition.

After the approval of the proposal for final distribution becomes final and no appeal is taken or is pending, then persons who have an undivided interest in a particular property of the estate may petition the court for partition prior to the closing of the estate.

## IV.

In view of our analysis above, we hold that the trial court did not err by rejecting appellants' counter-proposal that the estate be distributed equally among the nine children per stirpes, taking into consideration the quality or value of the respective shares. We have no basis for rejecting Pepe's personal decision regarding the disposition of his properties.

We AFFIRM the decision of the trial court.

Dated this ___31st___ day of ___July___, 1991.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
LARRY L. HILLBLOM, Special Judge